UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| METROPOLITAN DEVELOPMENT<br>AT KELSEY GARDENS, LLC<br>8605 Westwood Center Drive<br>Suite 500<br>Vienna, Virginia  22182<br>       Plaintiff<br><br>v.<br><br>KELSEY GARDENS 2004<br>TENANTS ASSOCIATION, INC.<br>1510 7th Street, N.W., #3A<br>Washington, D.C. 20001<br>    Serve:  Registered Agent<br>          Selma Providence<br>          1510 7th Street N.W., #3A<br>          Washington, D.C. 20001<br><br>       Defendant | Case No. _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT

**COMES NOW** Plaintiff, Metropolitan Development at Kelsey Gardens, LLC ("MDKG"), by and through counsel, and brings this action against Defendant, Kelsey Gardens 2004 Tenants Association, Inc. ("Tenants Association"), for declaratory relief pursuant to 28 U.S.C. § 2201(a). As set forth in detail below, Plaintiff specifically seeks declaratory judgment (a) that MDKG has validly purchased a majority of the Property tenants rights under and pursuant to the Rental Housing Conversion and Sale Act of 1980, as amended by DC Law 3-86 (D.C. Code 42-3404, et seq.) (the "Act"); (b) that the formation and organization of the Tenants Association was not authorized by a majority of the Property tenants; (c) that the Tenants Association is not a duly organized or validly existing entity under the laws of the District of

Columbia; and (d) that the Contract of Sale submitted to the Owner by the Tenants Association was not authorized by a majority of the Property tenants and improperly interferes with the MDKG's rights under the Tenant Assignment of Rights to Purchase previously executed by a majority of the Property tenants. In the alternative, if the Tenants Association is determined to be validly existing, (e) that the Property tenants can exercise their rights under the Act and related laws only if the tenants retain and exercise those rights; (f) that the Property tenants have the right to assign their rights under the Act; (g) that the Tenant Assignment of Rights to Purchase previously executed by a majority of the Property tenants constitute valid and legally binding agreements by which the majority of Property tenants have assigned their rights under the Act to MDKG; (h) that the Contract of Sale submitted to the Property Owner was not authorized or approved by MDKG as the assignee and owner of a majority of the Property tenants' rights under the Act; (i) that the Contract of Sale is not a valid offer under the laws of the District of Columbia; and (j) that, pursuant to the laws of the District of Columbia, the Tenant Association is not authorized or permitted to exercise the opportunity to purchase the Property. In support of such claims, Plaintiff hereby respectfully states as follows:

## THE PARTIES

1. Plaintiff MDKG is a Virginia limited liability company and has its primary place of business at 8605 Westwood Center Drive, Suite 500, Vienna, Virginia 22182.

2. Defendant Tenants Association is incorporated in the District of Columbia and has its primary place of business at 1510 7th Street, N.W., #3A, Washington, D.C., 20001.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this matter under the diversity statute, 28 U.S.C. § 1332(a), as Plaintiff MDKG is a Virginia limited liability company with its

principal place of business in Virginia, while Defendant Tenants Association is a District of Columbia corporation with its primary place of business in Washington, D.C., and as the amount in controversy, exclusive of interest and costs, exceeds the sum of seventy-five thousand dollars.

4. Venue in this Court is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(a) as the Defendant is deemed to reside in this judicial district.

## FACTS

5. The property at issue is commonly known as the Kelsey Gardens Apartments and is located at 700-702 Q Street, N.W., 701-703 P Street, N.W., and 1510-1518 7th Street, N.W., Washington, D.C. (the "Property" or "Kelsey Gardens").

6. The Property is currently owned by the Deliverance Church of God in Christ Housing Corporation, a District of Columbia not-for-profit corporation (the "Owner").

7. On February 19, 2004, the U.S. Department of Housing and Urban Development ("HUD") determined that the Owner "was in violation of the Regulatory Agreement for failure to maintain Kelsey Gardens in good repair and condition in accordance with its contract as set forth in 24 C.F.R. §5.703."

8. Despite the good faith of the Owner, HUD notified the Owner that it intended to proceed with foreclosure on the Property.

9. On March 12, 2004, GMAC Commercial Mortgage ("GMACCM"), the servicing agent for the Property mortgage holder, notified the Owner that since HUD had determined that the Owner had failed to meet its obligations under the Regulatory Agreement, the Owner was also in violation of its Mortgage Deed of Trust Note with the mortgage holder. As a result, GMACCM accelerated the payment of the outstanding principal balance on the underlying loan

secured by the Property. The loan became due and payable, in its entirety, in accordance with the terms of the Mortgage and the applicable federal regulation.

10. On March 17, 2004, the Owner entered into a Contribution and Purchase Agreement (the "Joint Venture Agreement") with MDKG for the joint redevelopment of the Property. Pursuant to the Joint Venture Agreement, MDKG agreed to pay $3,000,000.00 in return for the right to acquire not less than a ninety percent (90%) interest in the joint venture with the Owner pursuant to which the Property is to be redeveloped.

11. MDKG has determined that the cost and expense of attempting to renovate and rehabilitate the Property will substantially exceed the excess rental revenue that can be derived therefrom because the Property as constructed is structurally and mechanically beyond its useful life.

12. Pursuant to the Joint Venture Agreement, a new building will be constructed on the Property. The parties have proposed constructing a new building that would be approximately eight (8) stories tall and would provide at least two hundred and twenty (220) residential dwelling units. The parties have proposed that there be a unit-for-unit replacement of the affordable housing units at the Property, which means that of the proposed 220 units, 54 of the units at the redeveloped building would be reserved as affordable housing.

13. MDKG has also indicated its continuing commitment to the revitalization of the neighborhood and to the current Property tenants through financial and relocation assistance.

14. On Monday April 12, 2004, a representative of the Owner held a meeting (the "Meeting") for all Property residents to receive information about and have an opportunity to discuss the proposed redevelopment of Kelsey Gardens.

15. At the Meeting, representatives of the Owner advised the Property residents that HUD had accelerated the Property mortgage. The Owner's representative also advised the Property residents that, if qualified, they would be eligible for HUD provided housing choice vouchers and other relocation assistance. The Owner's representative also advised the Property residents that the Owner had entered into a joint venture with MDKG for the redevelopment and revitalization of the Property.

16. At the Meeting, the Owner's representative distributed to each of the Property tenants in attendance a copy of an Offer of Sale & Tenant Opportunity to Purchase with a Third Party Contract for Housing Accommodations with Five or More Rental Units (the "Offer of Sale"). (See Offer of Sale & Tenant Opportunity to Purchase with a Third Party Contract for Housing Accommodations with Five or More Rental Units attached at Tab A). The Offer of Sale was thereafter posted at the Property and officially mailed to all Property tenants via first class mail and certified mail, return receipt requested, the next day. (See Offer of Sale as mailed to all tenants of Property attached at Tab B).

17. At the Meeting, the Owner's representative also presented the Property tenants in attendance with a copy of a proposed Tenant Assignment of Rights to Purchase (the "Assignment of Rights") and explained to the tenants that if the tenants were willing to assign their rights under and pursuant to the Act to MDKG by executing the Assignment of Rights that MDKG would pay each tenant $1,000 cash.

18. Pursuant to the terms of the Assignment of Rights, if executed, each Property tenant would agree to the following:

> In accordance with the notice provisions of the D.C. Code Ann. §42-3404, a copy of which [the tenant]… received on April 12, 2004, and in accordance with the tenant assignment provisions of the D.C. Code Ann. § 42-

>   3404.06, for good and valuable consideration, which I received and is acceptable to me, I hereby voluntarily assign to Metropolitan Development at Kelsey Gardens, LLC, or its assignee, all legal and equitable right and interest I now, or may in the future, have to assert any interest to purchase my apartment unit and/or ownership interest in Kelsey Gardens Apartments.

19. In response to MDKG's offer, 35 of the 54 Property tenants executed the Assignment of Rights. The Assignment of Rights were executed freely and voluntarily by each of the Property tenants who accepted the offer of MDKG before a third-party witness and then each Property tenants' signature was notarized. (See copies of the executed Assignment of Rights attached at Tab C). MDGK has and continues to offer to all of the other Property tenants the opportunity to enter into an Assignment of Rights and to be paid therefore.

20. MDGK paid each of the Property tenants who accepted its offer $1,000.00 as agreed to by the parties as constituting fair and reasonable consideration, and to date MDKG has paid a total of $36,000.00 to the Property tenants.

21. The execution of this Assignment of Rights by the Property tenants was done willingly, with the tenants' full understanding and without coercion from the Owner, any representative of the Owner, MDKG or any third party.

22. These Assignment of Rights were executed under and pursuant to the Act, as amended and supplemented. In particular, pursuant to Section 42.3404.06 "Exercise or Assignment of Rights" that provides in pertinent part as follows:

>   The tenant may exercise rights under this subchapter in conjunction with a third party or by assigning or selling those rights to any party, whether private or governmental. The exercise, assignment, or sale of tenant rights may be for any consideration, which the tenant, in the tenant's sole discretion, finds acceptable. Such an exercise, assignment, or sale may occur at any time in the process provided in this subchapter and may be structured in any way the tenant, in the tenant's sole discretion, finds acceptable.

23.     A majority of the Property tenants have assigned their rights and interest under the Act and in the Property to MDKG.

24.     As set forth in the Offer of Sale mailed to all Property tenants, the tenants are permitted to make an offer of sale for the purchase of the Property subject to the requirements set forth in D.C. Code § 42-3404.11.

25.     On April 20, 2004, four (4) tenants of the Property executed Articles of Incorporation of Kelsey Gardens 2004 Tenants Association, Inc. The Tenants Association was formed for the purpose of retaining legal and technical assistance on all matters involving the purchase of the Property.

26.     Pursuant to the Tenants Association By-Laws, "[a] simple majority vote of those present shall control a decision unless required otherwise by these Bylaws or the District of Columbia law."

27.     This Tenants Association, however, was not formed in compliance with the laws of the District of Columbia. In particular, pursuant to D.C. Code § 42.3404.11(1), the association must "represent at least a majority of the occupied rental units as of the time of registration . . .".

28.     The Tenants Association was formed with the express purpose of exercising the rights of the Property tenants under the Act but the majority of the Property tenants had already sold and assigned those rights to MDKG.

29.     MDKG was not requested to consent to or approve the formation of the Tenants Association and was not notified of the intention to form the Tenants Association.

30.     At least eleven of the Property tenants who signed the petition purporting to establish the Tenants Association had previously sold and assigned their rights under the Act to

7

MDKG. Moreover, there is no evidence that these eleven tenants declared, as required under Section 2 of the Tenants Association Bylaws, that they would be bound by the decisions of the Tenants Association made in accordance with the Tenants Association Bylaws.

31. MDKG did not approve the organization or incorporation of the Tenants Association. Therefore, as MDKG is the owner and assignee of a majority of the Property tenants rights under the Act, the formation and organization of the Tenants Association was not authorized by a majority of the Property tenants.

32. As a result, the Tenants Association is not a duly organized or validly existing entity under the laws of the District of Columbia.

33. On April 21, 2004, the Tenants Association was issued a Certificate of Incorporation by the District of Columbia.

34. On May 12, 2004, the Owner again notified the Property residents that the Owner had formed a joint venture with MDKG, that each resident had received the required Notice of Sale and of their rights in connection therewith and that a majority of residents had previously sold and assigned their rights under the Act. In this flier, the Owner also explained once again that HUD intended to put the Property into the foreclosure process and that each resident would receive a relocation allowance and a refund of any security deposit due to them.

35. On May 13, 2004, HUD notified the Owner that "effective June 30, 2004, the Section 8 subsidy payments for all units covered under the HAP Contract are hereby abated pursuant to Section 20.b of the contract, and applicable regulations."

36. On May 13, 2004, the Owner also was notified the Property tenants that the Property mortgage had been assigned to HUD.

37. On or about May 26, 2004, the Tenants Association submitted to the Mayor an Application for Registration, which contained documentation that the Tenants Association represented at least a majority of the tenants. As noted above the Tenants Association does not represent a majority of the Property tenants as a result of the sale and assignment of the rights of a majority of the Property tenants to MDKG.

38. MDKG was not notified of or consulted about the Tenants Association's intent to submit an Application for Registration to the Mayor.

39. MDKG does not approve the Tenants Association's action to submit an Application for Registration to the Mayor.

40. As MDKG owns a majority of the tenants' rights pursuant to the Assignment of Rights and the laws of the District of Columbia, the documentation included in the Tenants Association's Application for Registration was false and was known to be false by the Tenants Association at the time that it was submitted.

41. On May 27, 2004, the Tenants Association notified the Property Owner's representative that the Tenants Association had accepted the Offer of Sale dated April 13, 2004, relating to the sale of the Property (the Tenants Association's "Contract of Sale"). (See Tenants Association Contract of Sale at Tab D). Pursuant to the Contract of Sale the Tenants Association has attempted to expressly reserve the right to "exercise its rights to purchase [the Property] in conjunction with a third party or by assigning or selling those rights to any [other] party...". The $50,000.00 deposit purportedly posted by the Tenants Association in connection with the Contract of Sale was posted by an undisclosed third party identified only as "UVAMC".

42. The Tenants Association's Contract of Sale was not properly served as required by the Act.

43. MDKG was not notified of or consulted about the Tenants Association's intent to submit the Contract of Sale.

44. MDKG does not approve the Tenants Association's action to submit a Contract of Sale to the Owner.

45. Additionally, as MDKG owns a majority of the tenants' rights, the Contract of Sale was not authorized by a majority of the Property tenants nor was it in compliance with the laws of the District of Columbia.

## COUNT I
### (Petition for Declaratory Judgment)

Plaintiff, Metropolitan Development at Kelsey Gardens, LLC, respectfully requests that this Court declare as follows:

A. That Plaintiff MDKG has validly purchased the rights of a majority of the Property tenants;

B. That the formation and organization of the Tenants Association was not authorized by a majority of the Property tenants;

C. That the Tenants Association is not a duly organized or validly existing entity under the laws of the District of Columbia;

D. That the Tenants Association's submission of a Contract of Sale without the consent or approval of MDKG is void and invalid and improperly interferes with rights of MDKG under and pursuant to the Tenant Assignments previously executed by a majority of the Property tenants;

E. In the alternative, if the Tenants Association is determined to be validly existing, that the Property tenants are legally authorized to exercise their rights under the Act only if the Property tenants retain and exercise those rights;

F. That the Property tenants have the right to assign their rights under the Act, but a clear majority assigned their rights to MDKG, and cannot assign their rights twice;

G. That the Tenant Assignment of Rights to Purchase constitute valid and legally binding agreements by which a majority of the Property tenants have assigned their rights under the Act to MDKG;

H. That the Contract of Sale submitted to the Property Owner was not authorized or approved by MDKG as the assignee and owner of a majority of the Property tenants' rights under the Act;

I. That the Contract of Sale is not a valid offer under the laws of the District of Columbia, and;

J. That pursuant to the laws of the District of Columbia, the Tenant Association is not authorized or permitted to exercise the opportunity to purchase the Property under the Act.

> Respectfully submitted,
>
> METROPOLITAN DEVELOPMENT
> AT KELSEY GARDENS, LLC
>
> *[signature]*
> Thomas O. Mason, Esq.
>   D.C. Bar Number 460408
> Rachel L. Semanchik, Esq.
>   D.C. Bar Number MD26511
> Williams Mullen, A Professional Corporation
> 8270 Greensboro Drive, Suite 700
> McLean, Virginia 22102
> Phone: (703) 760-5200
> Fax: (703) 748-0244
>
> Counsel for Plaintiff Metropolitan Development
> at Kelsey Gardens, LLC

1047945.06